## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

JANE DOE,

    Plaintiff,

v.

UNIVERSITY OF CHICAGO,
UNIVERSITY OF CHICAGO MEDICAL
CENTER, SAUL LEVMORE, THOMAS
MILES, MICHELE RICHARDSON,
MICHAEL SCHILL, ABBIE WILLARD
AND DAVID ZARFE,

    Defendants.

No. 22-cv-01032

Judge John F. Kness

## ORDER

Defendants' motion to dismiss (Dkt. 33) is granted. Case dismissed with prejudice. Plaintiff's motion for change of venue (Dkt. 44) is denied. Plaintiff's motion to compel defendant University of Chicago Medical Center to file a disclosure statement (Dkt. 53) is denied as moot. Plaintiff's various other motions (Dkt. 63) are granted in part and denied in part, as follows: the motion to reconsider the order to pay a filing fee is denied as moot; the motion to remain anonymous is granted; the motion to allow sealed records to remain sealed is granted; and the motion for an extension of time is denied as moot. Enter separate final judgment order. Civil case terminated.

## STATEMENT

### I.    Background

Plaintiff Jane Doe[1] alleges that the Individual Defendants, who are or were faculty or staff at Defendant University of Chicago ("the Law School"), conspired with

---

[1] Plaintiff seeks to continue this case under a pseudonym. As the Seventh Circuit has explained, the general rule is that anonymous litigation is disfavored, and a party seeking to proceed anonymously "must demonstrate exceptional circumstances that outweigh both the public policy in favor of identified parties and the prejudice to the opposing party that would result from anonymity." *Doe v. Village of Deerfield*, 819 F.3d 372, 376-77 (7th Cir. 2016). This case presents the rare situation where, in this Court's view, a pseudonym is warranted. Plaintiff's allegations reflect numerous details concerning highly sensitive personal matters

Defendant University of Chicago Medical Center ("UCMC") to keep her "captive," to deprive her of medical care, to force her to work against her will, to defraud her of a medical malpractice claim, and to subject her to various other wrong doings—all to keep her enrolled and paying tuition, resulting in her having a fraudulent law degree. (Dkt. 1 ¶¶ 15, 58; Dkt. 57 at 1.) Plaintiff contends her law degree is fraudulent because she received credit for papers she submitted late, which in her view constitutes a violation of the Law School's academic policies. (Dkt. 57 at 6.)

This alleged scheme occurred while Plaintiff attended the Law School from 2006 until 2010. (*Id.* ¶ 20.) Plaintiff filed a 116-page Complaint in December 2021, more than a decade after she graduated and the alleged wrongful conduct ended. (Dkt. 1.) Plaintiff brings six counts: Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 (Count I); Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505 (Count II); breach of fiduciary duty (Count III); breach of implied contract (Count IV); fraudulent concealment (Count V); and unjust enrichment (Count VI). (*Id.* at 66–107.)

Defendants argue, among other things, that the Court should dismiss the case under Rule 12(b)(6) of the Federal Rules of Civil Procedure because Plaintiff's claims are barred by the applicable statutes of limitations—the longest of which is five years. *See* 735 ILCS 5/13-205; *see also* Dkt. 33 at 6–10. Plaintiff responds[2] that the limitations period began in 2017 under the Illinois Fraudulent Concealment Statute, 735 ILCS 5/13-215, which allows a plaintiff to bring an action within five-years of discovering a defendant has fraudulently concealed a cause of action from plaintiff. (Dkt. 1 ¶¶ 344, 389, 404, 460, 472, 480.) But as explained below, even assuming that the Fraudulent Concealment Statute applies, Plaintiff's claims are nonetheless untimely because Plaintiff knew or should have known of Defendants' alleged wrongdoing in 2010. As a result, the tolling period expired in 2015. Because Plaintiff brought her claims too late, Plaintiff's case must be dismissed with prejudice.

---

relating to, among other things, Plaintiff's physical and mental health. Accordingly, Plaintiff's request to proceed under a pseudonym (see Dkt. 63) is granted.

[2] In an order (Dkt. 31) entered on June 16, 2022, the Court allowed Plaintiff leave to file a response to the anticipated motion to dismiss of up to 25 pages. Plaintiff instead filed a 27-page response, along with an additional 60 pages of exhibits. (Dkt. 38.) In view of Plaintiff's *pro se* status, however, the Court will not strike Plaintiff's response for violating the 25-page limit. In any event, Plaintiff's response fails to cite any of the 484 allegations in the Complaint, thus making it difficult to determine what allegations cited in Plaintiff's response were actually alleged in the Complaint.

## II.    Discussion

### A.    Legal Standard

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Each complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put another way, the complaint must present a "short, plain, and plausible factual narrative that conveys a story that holds together." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022) (cleaned up). In evaluating a motion to dismiss, the Court must accept as true the complaint's factual allegations and draw reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678. But even though factual allegations are entitled to the assumption of truth, mere legal conclusions are not. *Id.* at 678–79.

### B.    The Applicable Statute of Limitations Bars Plaintiff's Case

A complaint must not contain allegations that establish an affirmative defense or preclude the plausibility of its claims. *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006). A statute of limitations provides an affirmative defense. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Although "a statute of limitations defense is not normally part of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), when the allegations of the complaint reveal that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim." *Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011). A plaintiff can effectively plead "[her]self out of court by alleging facts sufficient to establish the complaint's tardiness." *Cancer Foundation, Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674–75 (7th Cir. 2009) (citation omitted). Where, as here, the relevant dates of the events giving rise to the claims are clearly set out in the allegations in the Complaint, consideration of the statute of limitations in a motion to dismiss is appropriate. *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009).

The longest statute of limitations applicable to Plaintiff's claims is five years. *See* 735 ILCS 5/13-205 (stating that the action "shall be commenced within 5 years next after the cause of action accrued"). This limitation period, however, is extended under the Fraudulent Concealment Statute if a person liable to the action fraudulently conceals the cause of such action from Plaintiff's knowledge. *See* 735 ILCS 5/13-215. To establish fraudulent concealment, a plaintiff must satisfy the following elements: (1) concealment of a material fact; (2) intent to induce a false belief where there exists a duty to speak; (3) that the other party could not have

discovered the truth through reasonable inquiry and relied upon the silence as an indication that the concealed fact did not exist; (4) that the other party would have acted differently had it known of the concealed information; and (5) that the other party's reliance resulted in its injury. *Ashby v. Pinnow*, 179 N.E.3d 295, 303–04 (Ill. App. Ct. 2020). For fraudulent concealment to toll a statute of limitations, alleged acts or representations must in fact prevent inquiry or discovery of claim or lull or induce claimant into delaying filing of claim. *Dancor Intern., Ltd. v. Friedman, Goldberg & Mintz*, 681 N.E.2d 617, 623–24 (Ill. App. Ct. 1997). In general, under the discovery rule, the determination of the point at which the limitations period commenced running is a question of fact. *Rasgaitis v. Waterstone Financial Group, Inc.*, 985 N.E.2d at 626, 630–31 (Ill. App. Ct. 2013). If it is apparent that only one conclusion can be drawn, however, the question "becomes one for the court." *Id.* at 630–31.

Plaintiff enrolled in the Law School in 2006 and graduated in June 2010. (Dkt. 1 ¶¶ 121, 321–22.) Although Plaintiff alleges an ongoing fraud based on her theory that her law degree is invalid (Dkt. 1 ¶¶ 345, 390, 405, 461, 473, 481), she does not allege any wrongful conduct by Defendants after June 2010. Because Plaintiff filed her claims five years beyond when the conduct occurred, her claims are time-barred, unless the limitation period is tolled.

Plaintiff attempts to show that the applicable limitations period is tolled. Plaintiff states that the University responded to her requests for information under the Family Educational Rights and Privacy Act (FERPA) in December 2016 and March 2017. (Dkt. 1 ¶¶ 330–32.) After receiving these responses, Plaintiff "performed legal research and concluded that [she] did not have a valid law degree due to lack of credits" (Dkt. 1 ¶ 332) despite (a) graduating; (b) sitting for the bar examination; and (c) practicing law for at least some period between 2010 and 2017. Plaintiff contends that, under the Fraudulent Concealment Statute, the limitations period for her claims began to run in 2017 when she discovered through the responses to her FERPA requests that Defendants awarded her a law degree in violation of school policies. (Dkt. 1 ¶¶ 330–32, 344, 389, 404, 460, 472, 480; Dkt. 38 at 6.)

Plaintiff maintains that Defendants owed her fiduciary duties. (*See* Dkt. 1, ¶¶ 395, 406–20; Dkt. 38 at 15–19.) Plaintiff argues, for instance, that the Court should apply the 1866 English case *Tate v. Williamson,* L. R. 2 Ch. 55 (1866), and find that Defendants are her fiduciaries because she is an orphan (despite being an adult with living parents). (Dkt. 38 at 19.) But that theory, along with the allegations in Plaintiff's Complaint, do not plausibly show that Plaintiff can meet the elements of the Fraudulent Concealment Statute.

Plaintiff proclaims the legal conclusion that "these statements [by Defendants] constituted fraud, false promises, misrepresentations, or the concealment,

4

suppression, or omission of material fact." (Dkt. 1 ¶ 397.) But it is unclear to which statements Plaintiff is referring, as the preceding paragraph only details one statement: "[t]he Law School advertised that it was accredited by the ABA." (*Id.* ¶ 396.) In any event, this is insufficient to plausibly establish concealment of a material fact. Plaintiff alleges nothing regarding Defendants intent to induce a false belief; what false belief she had or whether Defendants had a duty to speak. Plaintiff alleges that Defendants intended she "rely on these deceptions in enrolling [at the Law School]." (*Id.* ¶ 399.) Although it is, again, not entirely clear to what "deceptions" Plaintiff refers, the Court understands "deceptions" to mean the alleged violation of academic standards by continuing her enrollment despite her "[lack of] good standing or the ability to do satisfactory work." (*Id.* ¶ 398.) Plaintiff fails to adequately plead that she could not have discovered the truth through reasonable inquiry. Plaintiff does not allege that she would have acted differently had she known of these deceptions. Finally, Plaintiff does not allege reliance on these deceptions in her injury. Plaintiff's Complaint misses the mark in adequately pleading fraudulent concealment.

Not only does Plaintiff fail to adequately plead fraudulent concealment, but, of perhaps greater significance, Plaintiff's allegations also establish that she knew or should have known—by 2010 at the latest—of these "deceptions" and any resulting injury from them. Plaintiff had access to the academic policies Defendants supposedly violated, she had paid all of her tuition, she was aware of her poor academic performance, she had her transcript fully prepared and available, she learned that she failed the bar exam, and she had consulted with an attorney about her medical malpractice claims. (Dkt. 1, ¶¶ 50–58, 177, 240, 241, 300, 325.)

Plaintiff's attempts to show that she was put on notice of her claims after this date are either contradicted by her own allegations or are improperly based on material not alleged in the Complaint. Plaintiff expressly alleges that she was fully aware of the facts underpinning her law-school based claims, specifically her failure to fulfill the Law School's academic requirements, while she was enrolled. (*Id.* at ¶¶ 50–58, 265, 285, 294, 296, 301.) In fact, Plaintiff repeatedly alleges that she "lacked good standing," lacked "the ability to do satisfactory work," and either failed or did not complete courses, and failed to turn in key assignments. (*Id.* at ¶¶ 50–58, 177, 240, 300.) Plaintiff alleges that, in her first year of law school, as far back as 2007, she knew that she was not capable of performing the work because for the first time in her life she received a C grade, and subsequently a D grade in her second year. (*Id.* at ¶ 129.) Plaintiff further alleges that her transcript was prepared and available as of June 2010, and that it described all of the alleged courses for which Plaintiff claims she should have failed or not been awarded credit. (*Id.* at ¶¶ 47–58.)

In addition, Plaintiff's claim that Defendants acted improperly in allowing her to graduate is admittedly based on documents that were publicly available while she

was a student, including the ABA standards and the Law School's "published" academic policies ("available online"). (*Id.* at ¶¶ 29–46.) In any event, the Law School's program requirements and polices gave faculty members discretion to extend relevant deadlines beyond the standard dates for any writing projects necessary for graduation. (Dkt. 1-2 at 21.) Moreover, Plaintiff was indisputably aware of any "injury" she may have sustained in 2010. Plaintiff's alleged injuries consist of her loss of tuition and inability to find employment after she graduated. All of her tuition was paid by 2010 when she graduated, and in 2010 she was terminated from her job for poor performance and was allegedly unable to find another job. (*Id.* at ¶ 325.) Although the University disputes Plaintiff's claim that she was not entitled to graduate, she was fully aware by 2010 at the latest of all information upon which she bases her claims. Accordingly, each of Plaintiff's claims is barred by the respective statute of limitations.

As to Plaintiff's "medical malpractice"-based allegations, Plaintiff states that her New York doctors told her that UCMC committed "malpractice" in June 2008. (*Id.* at ¶¶ 167, 172.) Plaintiff also admits that she spoke with a personal injury attorney about suing UCMC in fall of 2008, but the attorney declined to represent her at that time. (*Id.* at ¶ 241.) Accordingly, Plaintiff admittedly was aware of any medical malpractice claims in 2008, and those claims are therefore time-barred as well.

In summary, Plaintiff filed her case beyond the applicable limitations period. Because Plaintiff's own allegations establish this affirmative defense conclusively, Plaintiff's case must be dismissed with prejudice.

C.    *Other Pending Motions*

Plaintiff has requested (Dkt. 44; Dkt. 67) that the Court transfer this case back to the Southern District of New York. A motion for a change of venue is governed by 28 U.S.C. § 1404(a), which provides that, for the "convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." A party seeking to change venue bears the burden of establishing that the transferee forum is clearly more convenient. *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986).

Three considerations bear on whether a transfer is appropriate. A transfer is appropriate if (1) venue is proper in both the transferor and transferee courts;[3] (2) the

---

[3] Venue is proper in: (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, . . . or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought. 28 U.S.C. § 1391(b).

transfer is for the convenience of the parties and witnesses; and (3) the transfer is in the interest of justice. *Kelley v. MailFinance Inc.*, 436 F. Supp. 3d 1136, 1140 (N.D. Ill. 2020). To determine whether the movant has met its burden to show that a transfer is both convenient and in the interest of justice, courts must consider both private- and public-interest factors. *See Am. Dredging Co. v. Miller*, 510 U.S. 443, 447 (1994); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981). Private interest factors include: "(1) the plaintiff's choice of forum, (2) the situs of the material events, (3) the relative ease of access to sources of proof, (4) the convenience of the parties, and (5) the convenience of the witnesses." *Swift v. Medicate Pharmacy, Inc.*, No. 10 C 1874, 2010 WL 3548006, at *3 (N.D. Ill. Sept. 3, 2010) (quoting *Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 913–914 (N.D. Ill. 2009)). Public interest factors include: "(1) the court's own docket congestion; (2) the preference for having a forum apply law with which it is familiar; (3) the local interest in resolving the controversy; and (4) the unfairness of burdening citizens in an unrelated forum with jury duty." *Chukwu v. Air France*, 218 F. Supp. 2d 979, 987 (N.D. Ill. 2002) (citing *Piper Aircraft*, 454 U.S. at 241 n.6). The relative weight to be given these factors depends on the circumstances of each case, and district courts enjoy "substantial flexibility" in considering the relative importance of each factor. *Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1245 (7th Cir. 1990).

Applying these considerations here, it bears emphasis that Section 1404 does not "require the Northern District to be the *best* forum." *Nw. 1 Trucking Inc. v. Haro*, No. 19-cv-397, 2020 WL 1974379, at *15 (N.D. Ill. Apr. 24, 2020) (citing *Brito v. Urbina*, 18-cv-2276, 2018 WL 3672743, at *4 (N.D. Ill. 2018)). Rather, Plaintiff "has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient." *Coffey*, 796 F.2d at 220–21.

To begin, Plaintiff fails to show that the Southern District of New York would be more convenient (or even "proper" within the meaning of Section 1404). Although the first private interest factor, the plaintiff's choice of forum, is ordinarily afforded great deference, *see Zelinski v. Columbia 300, Inc.*, 335 F.3d 633, 643 (7th Cir. 2003), no Defendant appears to be located in New York; in any event, the Southern District of New York has already transferred the case to this District. (Dkt. 7.) As to the location of material events and the relationship of those events to this District, *Rsch. Automation*, 626 F.3d at 978, all of Plaintiff's allegations concern events that occurred in this District. Relevant documents and witnesses are located here as well. Accordingly, because it appears that the material events mostly occurred in Illinois, the "situs of the material events" factor tips toward keeping the case in the Northern District of Illinois. *Jaramillo*, 664 F. Supp. 2d at 913–14.

More broadly, Plaintiff's motion for a change of venue appears to be based solely on her allegation that the Southern District of New York would be more convenient for her personally. (Dkt. 45 at 9–10; Dkt. 67 at 2.) To be sure, Plaintiff

appears to have recently endured significant personal difficulties. Yet, as the Seventh Circuit has explained, when a plaintiff and a defendant "are in different states[,] there is *no* choice of forum that will avoid imposing inconvenience." *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 665 (7th Cir. 2003). Plaintiff's inconveniences are not sufficient to warrant a transfer when weighed against the other relevant factors.

Ease of access to sources of proof is a neutral factor. Most documentary evidence today is produced electronically. *See Qurio Holdings, Inc. v. DISH Network Corp.*, 2015 WL 536002, at *3 (N.D. Ill. Feb. 9, 2015) ("Although section 1404(a) was adopted in the 1940s, it does not require a court to pretend that lawsuits are litigated and tried as they were in that era . . . . [A]s any experienced litigator or trial judge can attest, when records are produced in litigation nowadays, they are all (or virtually all) *produced* digitally"). Because neither party has identified with specificity any physical evidence that requires inspection or that is otherwise difficult to access remotely, this factor is neutral.

Finally, considerations related to the convenience of witnesses do not compel a transfer. It is "generally assumed that witnesses within the control of the party calling them, such as employees, will appear voluntarily." *FUL Inc. v. Unified Sch. Dist. No. 204*, 839 F. Supp. 1307, 1311 (N.D. Ill. 1993); *see also Buehler v. S & G Enters. Inc.*, No. 09 C 1396, 2009 WL 1543664, at *5 (N.D. Ill. June 2, 2009). So although most witnesses are likely located in this District, this factor remains neutral because it can be assumed Defendants' witnesses would appear in New York.

Public interest factors include considerations of docket congestion and likely speed to trial; each court's relative familiarity with the relevant law; the respective desirability of resolving controversies in each locale; and the relationship of each community to the controversy. *Rsch. Automation*, 626 F.3d at 978. These factors all weigh against a transfer. Among other reasons, every cause of action in Plaintiff's Complaint is based on Illinois state law; docket congestion is immaterial (especially given that the case was already transferred here); and the material events are significantly more related to Illinois than New York.

In sum, the balance of factors weighs strongly in favor of denying the transfer. Because Plaintiff has failed to meet the requirements of Section 1404(a), the motion to transfer venue is denied.

**III.   Conclusion**

Defendants' motion to dismiss is granted. Case dismissed with prejudice.

SO ORDERED in No. 22-cv-01032.

Date: September 27, 2023

_____
JOHN F. KNESS
United States District Judge